UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BRIAN BONNER,                          )
                                       )
        Plaintiff,                     )    CASE NO.:
                                       )    3:06-CV-00715-MHT
v.                                     )
                                       )
NORINCO a/k/a CHINA NORTH              )
INDUSTRIES                             )
CORPORATION, et al.,                   )
                                       )
        Defendants.                    )

REPLY BRIEF OF QIQIHAR HAWK IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the defendant, Qiqihar Hawk Industries Co.,
Ltd., and submits the following reply brief in support of
its motion for summary judgment:

Plaintiff asserts a products liability action under
Alabama law against Qiqihar Hawk for an injury sustained to
his right hand while using a shotgun. Defendant Norinco
moved for summary judgment on the affirmative defense of
contributory negligence as a matter of law. Qiqihar Hawk
joined in that motion for summary judgment, adopting and
incorporating by reference Norinco's motion, evidentiary
submission and supporting brief. Qiqihar Hawk further

moved for summary judgment on two additional affirmative defenses: product misuse and assumption of the risk.

## I. Contributory Negligence.

Plaintiff has admitted to four facts which undeniably constitute contributory negligence as a matter of law. First, plaintiff admits knowing the shotgun was loaded. (Bonner dep. at 71.12-14.) Second, plaintiff admits the safety was off. (Aff. of John Butters at page 2, attached as Exh. A to Pl.'s Opposition Br.)[1] Third, plaintiff admits placing his right hand over the end of the barrel of the loaded shotgun. (Bonner dep. at 75.17-19.) And fourth, plaintiff admits using his left hand to pull the trigger while his right hand was over the barrel. (Aff. of Butters at page 2.)[2] These four admitted facts alone, irrespective of any other facts, demand that plaintiff be found contributorily negligent as a matter of law, particularly

---

[1] In order to assert his opinion, plaintiff's liability expert was forced to conclude the safety of the gun was disengaged. Plaintiff could not remember one way or the other. (Bonner dep. at 80.4-6.)

[2] Again, in order to render his opinion, plaintiff's liability expert had to admit plaintiff pulled the trigger of his gun. And again, plaintiff testified he could not remember whether he pulled the trigger. (Bonner dep. at 110.1-5.)

under the authority of <u>Burleson v. RSR Group Florida, Inc.</u> No. 1050360, 2007 Ala. LEXIS 195 (Ala. Sept. 21, 2007).

Notwithstanding these undisputed facts which undeniably point to contributory negligence, plaintiff seeks to create an issue of fact in his brief by summarizing and mischaracterizing his testimony. Specifically, he claims the following: "When, while pointed upward, the barrel started to move, giving the impression of beginning to fall off, Brian Bonner reflexively grabbed the barrel with his right hand." (Pl.'s Br. at 11.) Apparently, plaintiff is suggesting he is relieved of any contributory negligence because he was acting "reflexively" when he grabbed the end of the barrel. This is not so. In <u>Campbell v. Alabama Power Company</u>, 567 So. 2d 1222 (Ala. 1990), a house mover fell from the roof of a moving house and grabbed a live power line "out of a reflex reaction to losing his balance." 567 So. 2d at 1226. He sued Alabama Power for being negligent in the maintenance and location of the power line. <u>Id</u>. at 1223. In affirming a finding of contributory negligence as a matter of law, the Alabama Supreme Court explained, "One who wrongfully and

3

voluntarily puts himself in a position of danger cannot invoke the 'sudden emergency' doctrine and thereby escape a charge of contributory negligence." Id. at 1225. Even assuming plaintiff "reflexively" grabbed a "falling" shotgun barrel, plaintiff put himself in a position of danger by handling a loaded gun with the safety disengaged; such conduct therefore renders him contributorily negligent as a matter of law.

However, as a careful examination of the evidence reveals, plaintiff ultimately admitted he did not really remember the barrel falling off and he is – in fact – speculating. The following is plaintiff's testimony on the subject of how he was injured:[3]

> Q.   And tell me how the incident happened, how you injured your hand.
>
> A.   He was shooting the gun.
>
> Q.   Who is he?
>
> A.   B.J.

---

[3]   For the convenience of the Court in understanding the following testimony, particularly with respect to the terms used as they relate to the shotgun, a selected excerpt from the Owner's Manual is attached hereto as Exhibit A as a demonstrative exhibit, containing a diagram of an exemplar shotgun.

4

Q.   Okay.

A.   And it misfired and I got it from him.  ***And it's the pretty much the last thing I remember.  It all happened so fast.***

(Bonner dep. at 62.1-10.) (Emphasis added.)   Upon further examination, plaintiff testified as follows:

Q.   And [B.J.] did what then?

A.   He handed it over to me.

Q.   All right.  And did you reach out to grab the gun?

A.   I believe by instincts, reflexes, when it started to fall apart, yes, sir.

Q.   Now, you were behind him when this occurred?

A.   Yes, sir.  Pretty much behind him at an angle.  He was standing here and I was probably standing back here somewhere(indicating).

Q.   Okay.  All right.  So, you were on his left side?

A.   I believe so, yes, sir.

Q.   Is he right-handed?

A.   Yes, sir.

Q.   So, he had the gun mounted on his right shoulder?

A.   Yes, sir.

Q.   And did you go to him or he turn to you?

A.   He turned to me.

Q.  All right.   And which way did he turn?

A.   Like this way (indicating).

Q.   So, he turned to his left?   And how did he hand the gun to you?

A.   Just handed it over.

Q.   Where was the barrel pointing?

A.   Up.

Q.   Was it pointing up over his right or his left or straight up?

A.   I can't remember.

Q.   Do you – How did you grab or receive the gun?

A.   With both hands, just grabbed it, one hand on the bump area and the other hand on the stock.[4]

Q.   All right.   And which hand grabbed the pump?[5]

A.   I believe my left hand.   I'm not really sure.

---

[4]    The "stock" is also known as the "buttstock."
[5]    The "pump" is also known as the "fore-end."

Q.   And you think your right hand grabbed the stock?

A.   I believe so, yes.

Q.   What happened next?

A.   I think everything just – the barrel fell off and by reflexes, I reached and grabbed it.   And that's all I remember on my part.

Q.   You say the barrel was pointing up in the air?

A.   Yes, sir.

Q.   And you say it started to fall?

A.   Yes, sir.

Q.   In what fashion?

A.   I think – I'm not really sure.   I think the gun went like that (indicating), and the barrel started to slide off, something like that.   And by reflex, I reached and grabbed it.

Q.   Which hand did you grab the barrel with?

A.   My right.

Q.   And at that time, what was your left hand grabbing?

A.   I believe it was on the stock.

Q.   Where did you grab the barrel?

A.   On the top.

Q.    Why did you grab the barrel on top?

A.    *I have no idea.  I can't remember.*

Q.    Well, what happened when you grabbed the barrel on top?

A.    *I can't remember.*  The next thing I knew I had a hole in my hand.

Q.    So, you don't remember anything between the time you reached to grab the barrel and your injury?

A.    Yes, sir.

Q.    You cannot say whether you had your left hand on the trigger?

A.    I can't say that, yes.

Q.    You can't say that you pushed the barrel or shoved the barrel into the receiver?

A.    Yes, sir.  Yes, sir.

Q.    You can't say that right.  You just don't remember?

A.    I don't remember sir.

Q.    And B.J. was facing you when all this happened?

A.    By the time I got shot, he was already walking back towards the house because I told him to get my uncle.

(Bonner dep. at 72.22-77.5.) (Emphasis added.)  Plaintiff's

testimony on the subject continues:

> Q.  So, he had started walking to Aunt
> Bobby's?
>
> A.  Yes, sir.
>
> Q.  And at what point did the barrel
> start to come off?
>
> A.  While he was walking.
>
> Q.  Had you lowered the gun in any
> fashion?
>
> A.  I can't remember.
>
> Q.  So, he was looking away when it
> actually discharged?
>
> A.  Yes, sir.
>
> Q.  And it injured your right hand?
>
> A.  Yes, sir.
>
> Q.  And tell me what ya'll did right
> after that happened.
>
> A.  I grabbed my right hand with my left
> hand.  I believe I just dropped the gun
> where it was and grabbed my right hand in
> my left hand and took off running.  And
> my aunt was outside doing yard work and
> she seen something was wrong and she came
> over there to me.

(Bonner dep. at 80.7-81.7.)

Q. All right. Before we talk about that, let me go back to the day of this incident. You dropped the gun?

A. After I got shot, yes, sir.

Q. And as far as you know, did someone else get the gun?

A. After a little while later that day, my uncle I guess, my Aunt Bobby was fixing to marry Chris Dennis. And he went back to their house. And my Uncle Ralph's and Aunt Bobby's house, and picked up the gun.

Q. I'm sorry. Who is it that picked them up?

A. Chris Dennis.

(Bonner dep. at 84.7-84.21.)

Q. All right. What did he do with the guns after he –

A. He took them to his house and put them in the safe. And he said when he was walking up the steps to his front door the barrel fell off with him there. It just fell off and he picked both pieces up and put them into his safe.

(Bonner dep. at 85.9-85.16.)

Q. Now, you said Chris said – told you the gun – the barrel fell off?

A. Uh-huh.

Q. Did he say whether the barrel fell off when he picked it up at the field?

A.   He didn't say that.  He said when he was walking up the steps into his front door, the barrel just slid right off and fell into the floor.

Q.   Is it possible, when you were out there in the field right before you injured yourself, that the barrel did not fall off?

     Mr. Hodges:  Object to the form.

A.   *I really don't know*.  I believe it was sliding off.

Q.   But it may have been not sliding at all?

     Mr. Hodges:  Object to the form.

Q.   In other words, how sure are you that the barrel came off when you were out there in the field?

A.   *I'm not really sure.  I just know that it fell off when he told me.  That's the reason I figured.*

Q.   Okay.  So, when Chris Dennis told you the barrel had fallen off when he was handling it, you figured that maybe the barrel fell off when you handled it?

     Mr. Hodges:  Object to form.

Q.   Pardon?  That would be yes?

A.   I didn't say yes or no.

Q.   Oh, I'm sorry.  I couldn't hear you.  My question was:  *when Chris told you the*

> ***barrel fell off for him, did you figure
> that it must have fallen off for you?***
>
> A.   ***If it was broken at the time, yes.***

(Bonner dep. at 87.9-89.3.) (Emphasis added.)   Out of an
abundance of caution, the plaintiff was asked yet again if
he remembered the barrel falling off:

> Q.   ***You don't remember whether the
> barrel fell off?***
>
> A.   ***No, sir.***

(Bonner dep. at 110.14-16.) (Emphasis added.)   Plaintiff is
the only person in a position to know what happened.   The
last thing he remembers is his right hand on the end of the
stock and his left hand on the pump.   The next thing he
remembers after that, his right hand is over the barrel as
the gun is being discharged.   He could provide no
explanation as to how he managed to move his right hand
from one end of the gun to the other end of the gun, while
moving his left hand from the pump to the trigger.

It is further evident that he is plainly speculating
that the barrel began to slip off.   As an initial matter,
it is a sheer physical impossibility for the barrel to fall
off or even move while it is pointed upwards.   The barrel

slides into the receiver as is indicated by the attached photographs of the shotgun. (Attached hereto as Demonstrative Exhibit B are photographs of the shotgun at issue; see also, Demonstrative Exh. A, page 2, showing a dismounted shotgun.) The barrel can only slide off if, among other things, it is pointed down to the ground. This is demonstrated by the testimony of Chris Dennis, who explained that the barrel did not fall off until he pointed the gun down towards the ground. Uncle Chris had picked up the gun from the field, while it was in one piece, took it to his pickup truck and placed it in the back of his truck, barrel first. (Chris Dennis dep. at 39.10-40.2; 43.5-9; 43.23-44.20.) After driving to his house, Uncle Chris pulled the gun out of the back of his truck and, while he was walking into his house, with the barrel pointed downwards, it slipped off. (Id. at 49.5-18.) Plaintiff admitted in his deposition that he therefore speculated that the barrel must have slipped off while he was handling it. (Bonner dep. at 88.22-89.3.) Importantly, he has no recollection or memory of this occurring. He admitted that he was engaging in conjecture and supposition.

In any event, the separation of the barrel guide ring[6] from the barrel is simply not material to the question of contributory negligence as a matter of law. As the Alabama Supreme Court explains,

> "[T]he danger of handling a firearm with a live [shell] chambered in line with the hammer and the firing pin without having first engaged the manual safety is self-evident, especially to an experienced and safety-conscious gun owner like [plaintiff], so that reasonable people would have to logically conclude that he *should have* at least appreciated the danger associated with doing so.

2007 Ala. LEXIS 195, *11-*12 (emphasis original). The Court used the words "should have" because "[d]irect evidence of such an appreciation of danger is not required if the evidence admits of no conclusion except that the plaintiff must have appreciated the hazard involved." Burleson, 2007 Ala. LEXIS at *10-*11, quoting Serio v. Merrell, Inc., 941 So. 2d 960 (Ala. 2006); see also, Wilson v. Alabama Power Co., 495 So. 2d 48 (Ala. 1986) (affirming summary judgment on grounds that 15 year old boy was

---

[6]    On the diagram in Demonstrative Exhibit A, the barrel guide ring is located immediately to the left of the magazine tube cap. The guide ring is affixed to the barrel. By removing the magazine tub cap, one can slide the barrel out of the receiver and off the fore-end.

contributorily negligent as a matter of law for coming into contact with a power line while climbing a tree); cf., Blalock v. Wal-Mart Stores East, LP, 2007 U.S. Dist. LEXIS 34640, *6-*7 (M.D. Ala. 2007) (stating in a premises liability case that it defied common sense to say the plaintiff did not appreciate the danger of an everyday obstacle lying on the ground and therefore finding as a matter of law that plaintiff was aware of the object and appreciated the danger it involved, entitling defendant to summary judgment based upon contributory negligence). Even Uncle Chris is of the opinion that plaintiff was contributorily negligent:

> Q. Brian is right handed, at least he was before this incident; right?
>
> A. Yes, sir.
>
> Q. And it was his right hand that he injured?
>
> A. Yes, sir.
>
> Q. And he put his right hand as we understand it on the end of the barrel in order for it to be injured?
>
> A. That's the way I understand it.
>
> Q. Have you ever after this accident, all the way up to today, asked Brian why

he put his right on the end of the
barrel?

A.  I don't recall asking him.  I just
told him it was stupid.

Q.  Did he ever explain to you why he
had his right hand on the barrel?

A.  He just said it was jammed or
something.  He said it was jammed and he
was trying to unjam it.

Q.  But he didn't specifically explain
to you why he had his right hand on the
barrel?

A.  No, sir.

(Dep. Of Chris Dennis at 58.9-59.9.)

In sum, plaintiff has admitted to facts which
constitute contributory negligence as a matter of law.  His
attempt to create an issue of fact as to whether and when
the barrel slid or fell off is based upon speculation and
conjecture, plaintiff himself having admitted he does not
really remember what occurred.  Finally, whether the barrel
slid or fell off is immaterial; reflexively grabbing it
does not excuse his negligence.  Accordingly, Qiqihar Hawk
is entitled to summary judgment on the affirmative defense
of contributory negligence as a matter of law.

## II.  Product Misuse.

Plaintiff misused the shotgun because he did not use it in a manner that could have been intended or foreseen by a manufacturer.  Uniroyal Goodrich Tire Co. v. Hall, 681 So. 2d 126, 129 (Ala. 1996) ("A plaintiff misuses a product when he or she uses it in a manner not intended or foreseen by the manufacturer.")  As a matter of law, it is not reasonably foreseeable to a manufacturer of a shotgun that an end-user will – while seeking to "unjam" a gun - put one hand over the barrel of a loaded shotgun and pull the trigger with his other hand.[7]  Plaintiff must therefore be found to have misused the product as a matter of law.

## III. Assumption of the Risk.

Plaintiff assumed the risk of his injury because he must have known and appreciated the danger of putting his

---

[7]    Although he denies in his brief trying to "unjam" the gun, plaintiff admitted in his deposition that he could not remember what he was doing when he shot himself. (Bonner dep. at 67.12-13, 76.2-5, 76.10-13.)  By contrast, Uncle Chris testified unequivocally that plaintiff told him he was trying to unjam the gun when he shot himself. (Chris Dennis dep. at 59.1-5.)  Even taking the evidence in the light most favorable for plaintiff on the question of whether he was trying to unjam the gun, the only affirmative evidence in the record is his statement to Uncle Chris.  Therefore, it must be accepted that this is what plaintiff was doing when he shot himself.

hand over the end of the barrel while trying to "unjam" the gun. He did this voluntarily. And his decision was plainly unreasonable, considering the shotgun was loaded, the safety was disengaged, and his left hand was on the trigger. <u>See</u>, <u>Hall</u> 681 So. 2d at 130 (explaining that assumption of the risk encompasses three elements: plaintiff must have known and appreciated the danger of his action; he undertook the risk voluntarily; and his decision was unreasonable). Plaintiff knew the rules of gun safety and therefore appreciated the danger of a loaded shotgun:

> Q. Tell me what you know about gun safety. What are some of the rules about gun safety?
>
> A. Never keep it loaded. If it has any shells in it, don't have it cocked back or ready to be fired until you are ready to shoot it. Always keep it on safety and ***never have it aimed at anybody or anything unless you know you're going to shoot a target or something***.
>
> Q. Do you walk around with a loaded gun?
>
> A. No, sir.
>
> Q. Do you look into the barrel of a loaded gun?
>
> A. No, sir.

(Bonner dep. at 26.11-27.3.) (Emphasis added.)  Plaintiff knew not to put his hand over the barrel of the loaded gun and yet he chose to do so.  He therefore assumed the risk of his injury as a matter of law.

## IV. Conclusion.

In sum, there is no genuine issue of material fact on the question of whether plaintiff was contributorily negligent, of whether he misused the product and of whether he assumed the risk of his injury: he did all three as a matter of law, and Qiqihar Hawk is therefore entitled to summary judgment.

Respectfully submitted,

/s/Todd Higey
Todd Higey
Ala. Bar No. HIG019
Attorney for Qiqihar Hawk
    Industries Co. Ltd.
RichardsonClement PC
200 Cahaba Park Circle, Ste. 125
Birmingham, Alabama  35242
Telephone:  (205) 572-4100
Fax:  (205) 572-4199
E-mail:
tmh@richardsonclement.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

David J. Hodge, Esq.
PITTMAN, DUTTON, KIRBY & HELLUMS, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203

James C. Barton, Jr., Esq.
Alan D. Mathis, Esq.
JOHNSTON BARTON PROCTOR & ROSE LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama 35209

Nick Wooten, Esq.
WOOTEN LAW FIRM, P.C.
P.O. Drawer 290
Lafayette, Alabama 36862

/s/Todd M. Higey
Of Counsel

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BRIAN BONNER,                  )
                               )
        Plaintiff,             )     CASE NO.:
                               )     3:06-CV-00715-MHT
v.                             )
                               )
NORINCO a/k/a CHINA NORTH      )
INDUSTRIES                     )
CORPORATION, et al.,           )
                               )
        Defendants.            )

REPLY BRIEF OF QIQIHAR HAWK IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# Demonstrative
# Exhibit A

There are many models of the pump shotgun and many accessories available for many of the models. While there are differences between the models such as sights or stock materials, the basic design and action of the gun is the same, model to model.



**CAUTION:** Gun handling requires common sense. Any firearm is classified as dangerous because it can cause serious injury or death if used improperly. We build it so that it is completely safe to use and to provide you with many years of shooting pleasure. Once it leaves the factory, it is up to you to use it responsibly, safely and keep it away from children. Store it properly and securely.

**WARNING:** Discharging firearms in poorly ventilated areas, cleaning firearms, or handling ammunition may result in exposures to lead and other substances known to the State of California to cause birth defects, reproductive harm, and other serious physical injury. Have adequate ventilation at all times. Wash hands thoroughly after exposure.

1



Fig. 7 Dismounted Shotgun

Buy a good quality cleaning kit and follow the kit instructions. Keep the barrel clean and lightly oiled inside and out. Clean the receiver/bolt area inside and out. Keep a good quality spray lubricant handy to insure good coverage of protection for your gun. (Remember, store your gun in a dismounted condition.) Keep your gun wrapped in some old oily rags; old T shirts are the very best. Over time your gun will develop a soft 'patina' to the finish which will enhance its appearance as it gets older.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BRIAN BONNER,                          )
                                       )
        Plaintiff,                     )     CASE NO.:
                                       )     3:06-CV-00715-MHT
v.                                     )
                                       )
NORINCO a/k/a CHINA NORTH              )
INDUSTRIES                             )
CORPORATION, et al.,                   )
                                       )
        Defendants.                    )

REPLY BRIEF OF QIQIHAR HAWK IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# Demonstrative
# Exhibit B



