IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BRIAN BONNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 3:06-cv-00715-MHT |
| ) | |
| INTERSTATE ARMS CORP., et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S SUR-REPLY MEMORANDUM BRIEF IN FURTHER
OPPOSITION TO TWO DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT**

Brian Bonner offers this sur-reply memorandum brief in further opposition to the motions for summary judgment separately filed by China North Industries Corporation ("Norinco") and Qiqihar Hawk Industries Co., Ltd. For the reasons stated in his initial opposing memorandum brief and this sur-reply memorandum brief, plaintiff again asks this Court to deny both requests for a summary judgment.

*Factual Matters*

In its reply memorandum brief, Qiqihar Hawk wrote: "And fourth, plaintiff admits using his left hand to pull the trigger while his right hand was over the barrel. (Aff. of Butters at page 2)." *Reply Brief of Qiqihar Hawk in Support of Motion for Summary Judgment* at 2. In an accompanying footnote, Qiqihar Hawk further wrote: "Again, in order to render his opinion, plaintiff's liability expert had to admit plaintiff pulled the trigger of his gun. And again, plaintiff testified he could not remember

whether he pulled the trigger. (Bonner dep. at 110.1-5.)" *Id.* at 2 n.2. Brian Bonner never testified that he intentionally pulled the subject shotgun's trigger after placing his right hand over the barrel; he testified that, when he sensed the barrel moving, he reactively moved his right hand up the barrel. (Deposition of Brian Bonner at 73 & 75-76) In his report, John Butters opined "that the firearm discharged during Mr. Bonner's attempt to prevent the barrel from falling off **due to an inadvertent trigger pull** occasioned by the barrel suddenly and unexpectedly breaking off the gun." (*Report of John T. Butters* at 2; emphasis added). John Butters concluded that there was inadvertent contact with the trigger, as opposed to an intentionally pulling of the trigger. There is no evidence, conclusively or otherwise, that Brian Bonner intentionally put his right hand, his dominant hand, over the top of the barrel and then intentionally pulled the trigger with his left hand. There is no evidence that Brian Bonner's finger pulled the trigger; there is only evidence that the trigger was "inadvertently pulled" by contact with something. The record shows that he did nothing intentionally after he took possess of the subject shotgun so that then eleven- or twelve-year old B. J. Sadler could fetch an adult to come and take possession of a shotgun that had failed to discharge or had jammed.

Both Qiqihar Hawk and Norinco take the phrase "while pointed upward" too literally. Brian Bonner was holding the shotgun so that the barrel was not pointing in the direction of anyone who might be in the vicinity. It is more reasonable to presume that he was holding the shotgun at a "port arms" position. Regardless, Brian Bonner affirmatively testified that he sensed the barrel sliding or moving; therefore, there is evidence that he was holding the shotgun such that the barrel could slide or move. In

light of the fact that securing welds had failed, it is quite reasonable to find that the barrel did slide or move as described by Brian Bonner.

Qiqihar Hawk wrote: "Even Uncle Chris is of the opinion that plaintiff was contributorily negligent." *Reply Brief of Qigihar Hawk in Support of Motion for Summary Judgment* at 15. Qiqihar Hawk never sought to qualify Christopher Dennis as an expert witness. From the record, it is impossible to qualify Christopher Dennis as an expert in any field. As indicated in the exchange from Christopher Dennis's deposition republished by Qiqihar Hawk, Christopher Dennis never asked Brain Bonner why he put his right hand on the end of the barrel. Christopher Dennis reported that Brian Bonner "said ... he was trying to unjam it." Christopher Dennis did not witness the subject discharge. Brian Bonner testified that the discharge occurred while B. J. Sadler was only a short distance away. (Deposition of Brian Bonner at 80) Brian Bonner testified that he was simply holding the shotgun and was waiting until an adult came to see what was remiss with the shotgun. A jury may reasonably find that Christopher Dennis misspoke when he reported that Brian Bonner said that "he was trying to unjam it," something that Brian Bonner affirmatively denied doing.

Norinco wrote: "Plaintiff has attempted to distinguish *Burleson* by claiming that Plaintiff was inexperienced with guns. This conflicts with Plaintiff's deposition testimony, which indicates a familiarity with a variety of firearms from a young age. (B. Bonner Dep. p. 18, lines 8-18.)." *Defendant China North Industries Corporation's Reply in Further Support of Its Motion for Summary Judgment* at 3. Brian Bonner was familiar with shooting firearms; shooting firearms is quite different from familiarity with coping with a shotgun that failed to discharge or jammed. As previously discussed, when

3

confronted with the failure to discharge or the jamming of the subject shotgun, Brian Bonner took possession of the shotgun from the younger B. J. Sadler and instructed B. J. Sadler to fetch an adult. Holding the shotgun awaiting the arrival of an adult was a reasonable and responsible response to the situation. Doing nothing, including engaging the safety, was reasonable and responsible. Unfortunately, due to defective design and/or manufacture of the welds securing the barrel, the barrel began to slide or move and Brian Bonner reacted spontaneously to keep the barrel from falling off. Under these facts, it is not possible to determine that Brian Bonner was contributorily negligent as a matter of law.

*Legal Matters*

In *Burleson v. RSR Group Florida, Inc.*, ___ So. 2d ___, 2007 WL 2745781 (Ala. Sep. 21, 2007), the deceased was an adult and a very experienced gun handler. Then sixteen-year old Brian Bonner was not an experienced gun handler. As important, in *Burleson*, the revolver did not fail to discharge or jam. Instead, in violation of his own personal safety rule, Stanley Burleson failed to unload the revolver before placing the revolver in its holster and returning the holstered revolver to his gun rack. In the present matter, Brian Bonner encountered a wholly unexpected event when the subject shotgun failed to discharge or jammed. He appreciated that he needed the assistance of an adult. He took possession of the shotgun from the younger B. J. Sadler, a reasonable and responsible act, and instructed B. J. Sadler to fetch an adult, another reasonable and responsible act. It was reasonable for Brian Bonner to do nothing more, including engaging the shotgun's safety, because Brian Bonner did not want to do anything that

might cause the shotgun to discharge and did not know what might cause a discharge. Doing nothing but holding the shotgun was quite reasonable under the circumstances. Brian Bonner's failure to engage the safety was excused under the circumstances. Brian Bonner did not breach a safety rule.

Norinco implies that, in *Burleson*, the Supreme Court of Alabama abandoned the principle that, for there to be contributory negligence as a matter of law, the plaintiff must have had a 'conscious appreciation' of the danger involved." *Defendant China North Industries Corporation's Reply in Further Support of Its Motion for Summary Judgment* at 2. No where in *Burleson* did the Supreme Court of Alabama overrule the principles found in *H.R.H. Metals v. Miller*, 833 So. 2d 18 (Ala. 2002), and *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839 (Ala. 2002). The simple fact is that, under the particular circumstances, Stanley Burleson's conduct was inexcusable and negligent. No reasonable person would store a weapon with a bullet in the chamber and without engaging the safety. As significant, Stanley Burleson's conscious appreciation of the danger of doing so was evinced by his long-standing personal safety rule of never storing a loaded weapon. The specific facts created the rare situation in which a determination of contributory negligence as a matter of law is possible. Those specific facts do not exist in the present matter.

Qiquhar Hawk's reliance on *Campbell v. Alabama Power Co.*, 567 So. 2d 1222 (Ala. 1990), is misplaced. As stated in that opinion, "Campbell was an experienced house mover and, by his own admission, had moved hundreds of houses during his work history" and "was aware of the difference between insulated electric lines and uninsulated lines." 567 So. 2d at 1224. Campbell and his co-workers were in the process of moving

5

a house under live power lines. Campbell was endeavoring to remove lines that had snagged on the house's roof. When he slipped, Campbell unfortunately grabbed both the neutral wire and the hot wire. Campbell fully appreciated the danger posed by working near live power lines. The specific danger was the nearby live power lines. Similarly, in *Wilson v. Alabama Power Co.*, 495 So. 2d 48 (Ala. 1986), the fifteen-year old boy knew that a live power line ran through the tree that he chose to climb; again, the specific danger was going near a live power line.

In the present matter, the danger was that the subject shotgun's barrel had become loose due to defective welds. Brian Bonner had no appreciation of this danger when he took possession of the shotgun from the younger boy because Brian Bonner only knew that the shotgun had failed to discharge or had jam but not why. Campbell's slip may have unexpected but he appreciated the danger posed by working anywhere near live power lines. The sliding or moving of the subject shotgun's barrel was unexpected and totally unforeseen by Brian Bonner. Brian Bonner reasonably thought that he was doing the right and responsible thing by just holding the shotgun until an adult arrived to address the failure to discharge or jamming incident. Brian Bonner did not knowingly expose himself to danger; certainly, it is impossible to find that Brian Bonner was contributorily negligent as a matter of law.

Qiqihar Hawk also cited *Blalock v. Wal-Mart Stores East, LP*, Civil Action No. 1:06cv381-MHT (WO), 2007 WL 1412445 (M.D. Ala. May 11, 2007). *Blalock* was a premises-liability action, not a products-liability action. The defense in *Blalock* was "open and obvious," and not contributory negligence. As noted by this Court in *Blalock*, "[m]ore recent [Alabama] cases have declared that the 'open and obvious' rule actually

negates the duty element of a negligence claim, thereby precluding consideration of affirmative defenses such as contributory negligence." 2007 WL 1412445 at * 3 n.2. As held in *Blalock*, the premises owner is relieved on any duty once the invitee appreciated the specific hazard. In the present matter, the specific danger was not "open and obvious" and Brian Bonner had no appreciation of the specific danger prior to the unexpected discharge. Nothing in *Blalock* is relevant in the present summary-judgment proceeding.

In connection with its brief discussion of the asserted product-misuse defense, Qiqihar Hawk cited a single Alabama appellate opinion, writing: "*Uniroyal Goodrich Tire Co. v. Hall*, 681 So. 2d 126, 129 (Ala. 1996)("A plaintiff misuses a product when he or she uses it in a manner not intended or foreseen by the manufacturer.")" *Reply Brief of Qigihar Hawk in Support of Motion for Summary Judgment* at 17. Actually, the quoted passage was part of a quotation from *General Motors Corp. v. Saint*, 646 So. 2d 564 (Ala. 1994). In *Hall*, the Supreme Court reversed a plaintiff's judgment because the trial court failed to charge the jury that contributory negligence was a defense to a AEMLD-based claim. The Supreme Court noted that contributory negligence is distinct from product misuse. In *Hall*, there was no holding that, as a matter of law, Hall had misused the subject product.

More fundamentally, Qigihar Hawk wrote: "As a matter of law, it is not reasonably foreseeable to a manufacturer of a shotgun that an end-user will – while seeking to 'unjam' a gun – put one hand over the barrel of a loaded shotgun – put one hand over the barrel of a loaded shotgun and pull the trigger with his other hand." *Reply Brief of Qigihar Hawk in Support of Motion for Summary Judgment* at 17. Initially, there

7

is a genuine dispute as to whether Brian Bonner was trying to "unjam" the shotgun. Brian Bonner's description of the incident, including the fact that the discharge occurred while B. J. Sadler was just a few steps away, supports a factual finding that Brian Bonner never tried to "unjam" the shotgun but was just holding the shotgun when the barrel began to slide or move.  As important, Qigihar Hawk continues to misunderstand the product-misuse defense under the AEMLD.  As discussed in the initial opposing memorandum brief, under Alabama law, a product supplier must foresee mistakes that a user might make when using a product for its intended purpose.  Product misuse is a defense only when the plaintiff totally used in the product for an imaginable purpose. The shotgun was being used for its intended purpose when it failed to discharge or jammed.  There was no product misuse.

      With regard to the assumption-of-the-risk defense, Qigihar Hawk **assumes** that Brian Bonner acted voluntarily in trying to "unjam" the shotgun and in putting his dominant hand over the end of the barrel.  In a summary-judgment proceeding, Qigihar Hawk's assumptions are worthless as proof of assumption of a risk as a matter of law. Placing his dominant hand over the end of the barrel is totally inconsistent with Brian Bonner trying to "unjam" the shotgun but is consistent with having been using his right to hold the barrel when he sensed the barrel beginning to slide or move.  If Brian Bonner had been trying to "unjam" the shotgun, he would have used his left hand to hold the barrel.  There is no evidence of Brian Bonner's subjective assumption of the risk of injury and, certainly, insufficient evidence to make a determination that he assumed the risk of injury as a matter of law.

Respectfully submitted,

**s/ David J. Hodge**
Of Counsel for Plaintiff
Bar Number: ASB -4617-I71H
Pittman Dutton Kirby & Hellums, P.C.
2001 Park Place North
1100 Park Place Tower
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile
Email:  PHDKH-efiling@pittmanhooks.com

**CERTIFICATE OF SERVICE**

I hereby certify that on **28th** day of **March**, **2008**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Todd M. Higey, Esq.
RICHARDSON CLEMENT, P.C.
200 Cahaba Park Circle, Suite 125
Birmingham, AL 35242
*Attorney for Interstate Arms and Qiqihar Hawk*

James C. Barton, Jr., Esq.
Alan D. Mathis, Esq.
JOHNSTON, BARTON, PROCTOR & POWELL, LLP
2900 Regions/Harbert Plaza
1901 6th Avenue North
Birmingham, AL 35203
*Attorney for Norinco*

s/ David J. Hodge
Of Counsel for Plaintiff

9